UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-80045-CR-MIDDLEBROOKS

UNITED STATES OF AMERICA,
    Plaintiff,

vs.

TOMAS AARON JOHNSEN,
    Defendant.
_____/

# DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT

Defendant, TOMAS AARON JOHNSEN, through undersigned counsel, files the following objections to the presentence investigation report (the PSI) prepared in this case. Specifically, Defendant states:

1. At p. 3, under the subheading **Aliases**, Mr. Johnsen denies the use of the alias "John."

2. At p. 7, ¶ 18, under the subheading **The Offense Conduct,** Mr. Johnsen objects to the factual characterization that he repeatedly "enticed" J.L. to meet for sex and to produce child pornography. Defendant submits that the two simply "agreed" to meet and produce the images.

3. At p. 7, ¶ 19, under the subheading **The Offense Conduct,** Mr. Johnsen clarifies that he stayed with J.L at her house. The paragraph implies that J.L. spent the three day period at Mr. Johnsen's residence.

1

4. At p. 9, ¶ 26, under the subheading **Obstruction Conduct,** Mr. Johnsen wishes to add the following facts: First, several weeks after his arrest for the state case (when his iPhone was seized), Mr. Johnsen sought to obtain a new iPhone. When Mr. Johnsen activated his new cell phone, his old iPhone was remotely erased, a standard, default security feature, when he moved the content from the old iPhone to his new phone and corresponding new iCloud account. Mr. Johnsen did not know that in the period of several weeks the local police had failed to copy the contents of his old iPhone or secure it so that it could not be remotely wiped.

Mr. Johnsen did **not** remotely erase the contents of the seized iPhone from his iCloud data storage account associated with that phone. Included in this iCloud account were the old iPhone "backups" or mirror images of the old iPhone, should the user need to restore that information onto that device or any other (such as if the phone is lost or stolen). Upon request of the Government, Mr. Johnsen voluntarily surrendered his iCloud password information so that the Government would have access to the backups and verify the existence of any data on his seized old iPhone.

5. At p. 9, ¶ 26, under the subheading **Additional Uncharged Conduct,** Mr. Johnsen wishes to add the following facts in order to paint a complete picture of the conduct: First and foremost, Mr. Johnsen never intentionally searched for or downloaded child pornography containing young, pre-pubescent

children or infants. The Peer-to-Peer internet file-sharing network requires batch downloading of dozens, if not hundreds or thousands of images at one time. The downloads occur in segments, with information from each image often coming from various sources. An individual does not know what he or she is getting in each batch download of images prior to a portion of the image being downloaded onto the user's computer. In Mr. Johnsen's case, when images of young, pre-pubescent or infants appeared, he stopped those downloads and deleted those images. Notably, Mr. Johnsen provided the passwords and advanced encryption software for his computers to the Government, and no images for pre-pubescent children or infants were found on any of his devices.

6. At p. 10, ¶ 29, under the subheading **Interview of Witness 1 and Witness 2,** Defendant believes that witness one was 16 years-old at the time of their relationship, not 15 years-old.

    Additionally, Defendant objects to all facts in the last two sentences, starting with "The defendant then, after acquiring a new girlfriend…" through the end of the paragraph. To clarify for the Court, Witness 1 ended their relationship, not Defendant, when Witness 1 started dating a man she would later marry. Although they later engaged in a video-chat, the chat was friendly and not romantic or sexual in nature.

7. At p. 10, ¶ 30, under the subheading **Interview of Witness 1 and Witness 2,** Defendant objects to the allegation that he destroyed a "sex tape" in the microwave. Defendant submits he showed Witness 2 the interesting physiological effects of cooking a blank cd/dvd in the microwave on three or four different occasions.

8. At p. 10, ¶ 31, under the subheading **Interview of Witness 1 and Witness 2,** Defendant objects to the facts alleged in the entire paragraph as being false. Again, Defendant vehemently denies any interest in infants, toddlers, or prepubescent children.

9. At p. 10, ¶ 32, under the subheading **Ongoing Investigation,** Defendant wishes to add that pursuant to his cooperation agreement with the Government he provided access (including passwords and detailed steps to unlock encryption software) to all of his devices.

10. At p. 11, ¶ 37-38 and 47, under the subheadings **Adjustment for Obstruction of Justice** and **Offense Level Computation,** Defendant objects to the finding that his conduct qualifies for a two level enhancement for obstruction of justice. Specifically Mr. Johnsen contends that he never willfully attempted to destroy any evidence (see objection 4 above for additional facts regarding his conduct).

11. At p. 13, ¶ 55, under the subheading **Adult Criminal Convictions**, Defendant objects to the accusation that he had a psilocybin mushroom in his

jacket pocket. The mushroom was a dried, shitake cooking mushroom. As a result, he was not charged with possession of any illicit material.

12. At p. 15-16, ¶ 62, under the subheading **Other Criminal Conduct**, Defendant objects to the facts contained in the factual narrative. In opposition to the facts summarized, Mr. Johnsen was the one who called the police on his ex-girlfriend because of their difficult relationship. Mr. Johnsen asserts that he never intimidated his ex-girlfriend. Notably, Mr. Johnsen did record the police, and his arrest for failing to cease his recording was unlawful. It is well settled in Florida state law that one has a right to record law enforcement officers. As a result, Mr. Johnsen sued the Broward Sheriff's Office and recovered a few thousand dollars.

13. At p. 17, ¶ 65-66, under the subheading **Other Arrests**, Mr. Johnsen objects to the facts contained in summaries for the two petitions for injunctions. Mr. Johnsen disputes all allegations of violence and threats of violence against his ex-girlfriend, Karye Martin, and their then un-born child. The two engaged in tumultuous child custody proceedings during which his ex-girlfriend made a number of false accusations. In fact, according to Mr. Johnsen, court records would show that he passed drug tests during that time and she was using illegal drugs while pregnant. Mr. Johnsen denies all accusations that he and his mother stalked her, hacked into her accounts, or in any way threatened her safety or the safety of their child. Lastly, while

Mr. Johnsen recalls that the injunctions were dismissed; his memory is that the Judge dismissed them because of a lack of credible evidence.

14. At p. 19, ¶ 73, under the subheading **Personal and Family Data**, as previously mentioned in objection number 13, Mr. Johnsen denies all allegations of domestic violence against his ex-girlfriend, Kare Martin. In fact, Ms. Martin often engaged in violence against Mr. Johnsen, but he never pursued such charges because when he would call the police they would talk him out of filing such charges. As in objection 13 above, Mr. Johnsen also objects to the accusations of him stalking her or hacking into her electronic accounts. Finally, Mr. Johnsen clarifies that his visits with his child had become less frequent and minimized due to supervision costs, but that he never ceased visitation with his daughter.

15. At p. 20-21, ¶ 81-83, under the subheading **Mental and Emotional**, Defendant objects to any and all polygraph examinations that reported "deception-countermeasures" relating to the accusation by his ex-girlfriend during their child custody battle that he had an interest in infants or sought a sexual relationship with his daughter. As previously mentioned, Mr. Johnsen has a history of relationships with post-pubescent, late teenage girls between the ages of 16 and 18. Mr. Johnsen denies interest in pre-pubescent children. Notably, no psychosexual examination has found that he is a pedophile.

16. At p. 27, ¶ 120, under the subheading **Recommended Special Conditions of Supervision**, defendant objects to the condition that he not possess or use any data encryption technique or program. Already in 2017, data breaches and the hacking of personal information is rampant. From the Federal Government's Office of Personal Management (OPM), private corporations including Target and Yahoo, to private individuals, it seems almost no one is safe from a data breach. It is likely that such attacks will become more commonplace and sophisticated in the years (if not decades) prior to Mr. Johnsen's release from prison. Encryption is one of the only means that an individual can take to protect their personal identifying information and other confidential information from being stolen.

Defendant understands the need for probation and their agents to conduct lawful searches during his period of supervised release. A reasonable alternative condition would be for Defendant to provide all passwords and steps necessary to access any information that may be encrypted. Indeed, Mr. Johnsen provided such passwords and steps to the FBI in this very case. With a condition to provide access, Mr. Johnsen would be able to secure his confidential information from would-be criminals while still allowing probation to conduct their supervisory function and ensure the safety of the public.

17. At p. 28, ¶ 121, under the subheading **<u>Recommended Special Conditions of Supervision</u>**, Defendant objects to the condition that he not possess a modem without approval of the Court, as such a condition likely violates the First Amendment to the United States Constitution and would also be an unreasonable restriction on Mr. Johnsen's liberty. As the Court is aware, a modem connects a device to the internet. Again, in 2017, the internet is everywhere. Refrigerators, air conditioning units, and televisions often connect to the internet. The internet is often required for mundane but important tasks like the ability to apply for jobs, pay bills, or search for a home. It is likely that society's dependency on the internet will only increase in the years, or decades, to come before Mr. Johnsen's release from prison.

Notably, the Supreme Court in *Packingham v. North Carolina*, 137 S. Ct. 1730 (2017), found a North Caroline statute banning convicted sex offenders from access to only social media sites to be in violation of the First Amendment's protection of free speech. The court held:

> In sum, to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights. It is unsettling to suggest that only a limited set of websites can be used even by persons who have completed their sentences. Even convicted criminals—and in some instances especially convicted criminals—might receive legitimate benefits from these means for access to the world of ideas, in particular if they seek to reform and to pursue lawful and rewarding lives.

*Id.* at 1737.  The Court noted the value of social media sites:

> On Facebook, for example, users can debate religion and politics with their friends and neighbors or share vacation photos. On LinkedIn, users

>can look for work, advertise for employees, or review tips on entrepreneurship. And on Twitter, users can petition their elected representatives and otherwise engage with them in a direct manner. Indeed, Governors in all 50 States and almost every Member of Congress have set up accounts for this purpose.

*Id.* at 1735.

The recommended restriction in this case is even broader than the unconstitutional statue in *Packingham*. Mr. Johnsen would be prohibited from not only social media sites, but also from shopping for groceries or other home necessities from Amazon.com, from reading breaking news on the Washing Post's online website, or from researching medical conditions on WebMD, limitations which troubled the *Packingham* court. *See Packingham* at 1736. Further, Mr. Johnsen would be prohibited from living in a modern apartment where the electric, air conditioning, or water is connected to the internet. He would be prohibited from having a roommate with a "smart tv" that accesses websites like Netflix, which has become commonplace in many households today. In short, such a restriction is overbroad and likely unconstitutional.

Defendant recommends the Court order that probation have access to Mr. Johnsen's internet history and social media profiles (notably, the State of Florida already requires that email addresses and social media profile information be registered as part of the sex offender registration requirements). This would allow probation to conduct their supervisory function, ensure the safety of the public, and still respect the rights of Mr.

Johnsen. Probation would also have the option of installing software on Mr. Johnsen's internet devices that could track his internet usage. The software option is already readily used by many probation offices. Combined with the other conditions of the Court, such as no contact with minors (PSI ¶ 123, but see the objection below referencing his own daughter) and the standard Adam Walsh Search Condition (PSI ¶ 127), these safety measures would adequately protect the public.

18. At p. 28, ¶ 123, under the subheading **Recommended Special Conditions of Supervision**, Mr. Johnsen requests contact with his daughter and that such conduct follow the restrictions of the supervising family court judge. Currently, Mr. Johnsen is required to have supervised visitation. When his daughter is older, Mr. Johnsen may wish to write her, call her, or engage in supervised visitation with her. The family court judge is best suited to supervise the restrictions of their contact, and Defendant requests this Court follow the family case plan ordered by that Court.

19. At p. 28, ¶ 126, under the subheading **Recommended Special Conditions of Supervision**, Mr. Johnsen objects to the condition that he not possess adult sexually explicit conduct. Such possession would otherwise be legal and would not endanger the public in anyway.

Wherefore, Mr. Johnsen respectfully requests this Court grant his objections to the PSI.

Respectfully submitted,

MICHAEL CARUSO
FEDERAL PUBLIC DEFENDER

s/Kristy R Militello
Kristy R. Militello
Assistant Federal Public Defender
Attorney for the Defendant
Florida Bar No. 56366
450 South Australian Ave., Suite 500
West Palm Beach, FL 33401
TEL:  (561) 833-6288
FAX:  (561) 833-0368
*Kristy_Militello@FD.org*

## CERTIFICATE OF SERVICE

  I hereby certify that on August 31, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                s/Kristy R. Militello
                Kristy R. Militello